# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PAUL LEGARE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>C. CRYER, et al.,<br><br>　　　　　Defendants. | Case No. 1:18-cv-01474-BAM (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO AMEND<br><br>(ECF No. 1)<br><br><br>**THIRTY-DAY DEADLINE** |

Plaintiff James Paul Legare ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint, filed on October 24, 2018, is currently before the Court for screening. (ECF No. 1.)

**I.　Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader

1

is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.      Allegations in Complaint**

Plaintiff is currently housed at the California Institution for Men in Chino, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at the California Substance Abuse and Treatment Facility ("CSATF") in Coalinga, California. Plaintiff names the following defendants: (1) C. Cryer, Chief Executive Officer; (2) S. Gates, Chief, Health Care Appeals Branch-Sacramento; and (3) Does 1 through 5, CSATF medical/health care providers.

Claim I

In Claim I, Plaintiff alleges that in July 2017, he was prescribed Oxcarbazepine ("Trileptal") for pain management. Soon after taking Trileptal, Plaintiff began to suffer serious side effects. On August 1, 2017, Plaintiff submitted a CDCR 7362 medical request complaining of serious side effects from Trileptal and requesting that Trileptal be discontinued and another pain management medication be issued. Plaintiff complains that his complaints and request were met with deliberate indifference and no corrective treatment was provided by Doe Defendants.

By August 15, 2017, Plaintiff could no longer withstand the side effects and refused to take Trileptal. As a result of his refusal, Doe Defendants issued Plaintiff a CDCR 128B record, which was negatively addressed by the Parole Board Commissioners on August 6, 2017.

From August 15, 2017 to September 17, 2017, Doe Defendants provided Plaintiff with no care or treatment to relieve Plaintiff's groin pain. On September 17, 2017, acetaminophen ("Mapap") was prescribed, which barely reduced the pain levels Plaintiff repeatedly reported to Doe Defendants. Plaintiff believes Mapap is nothing more than a fever reducer, which Doe Defendants knew and used to intentionally cause Plaintiff suffering.

On October 13, 2017, Plaintiff filed a Health Care Administrative Appeal.

On December 20, 2017, Defendant Cryer issued CSATF's institutional level response. Plaintiff contends that the response is deflective, callous and with self-serving verbiage that incorporates false statements that at no time was Plaintiff without pain medication. Additionally, Defendant Cryer stated that Trileptal was approved by the Food and Drug Administration ("FDA") for use as a pain medication. He also stated that Plaintiff's primary care provider could not prescribe Trileptal for use as a pain medication if it was not approved for such use.

On January 10, 2018, Plaintiff advanced his medical appeal to Headquarters Level for review. In his appeal, Plaintiff posed specific questions to Defendant Gates to clarify Defendant Cryer's statement that Trileptal was an authorized FDA pain management medication.

On April 26, 2018, Defendant Gates issued the Headquarters Level Response to Plaintiff's medical appeal. Defendant Gates did not answer whether Trileptal is an FDA-authorized pain management medication. Plaintiff claims Defendant Gates' response was deflective with omissions.

Plaintiff claims that contrary to the posture of Defendants Cryer, Gates and Doe Defendants, Trileptal is not an FDA-authorized drug to treat pain. Plaintiff cites to release notice in 2010 stating that the only authorized us for Trileptal is for treatment of epilepsy and there was a settlement for promoting Trileptal for use to treat pain.[1] Plaintiff further alleges that into 2016 and beyond, the FDA published information related to Trileptal informing CDCR health care providers and officials to properly train doctors. Plaintiff asserts that Defendants Cryer and Gates were required to ensure that Doe Defendants were properly trained. Plaintiff claims that defendants continue to prescribe

---

[1] Plaintiff cites to exhibits not attached to the complaint.

3

Oxcarbazepine.

Based on these allegations, Plaintiff asserts claims against Defendants Cryer and Gates based on their failure to adequately train prison doctors, deliberate indifference against Defendants Does 1 through 5, and emotional distress.

Claim II

In Claim II, Plaintiff alleges that he arrived at CSATF on March 9, 2017, to receive care for groin pain. After seven months of seeking pain relief, Plaintiff filed a CDCR 602 Health Care appeal alleging deliberate indifference and retaliation for prior exercise of his First Amendment rights. In his appeal, Plaintiff explained the pain he suffered, the ineffective psychotropic drugs to treat his pain, and the requests for referrals to specialists that were denied. Plaintiff contends that due to the inadequate pain management treatment, he suffered horrific pain that caused him to double over, fall to the ground injuring his head and arm or freezing like a statue.

Plaintiff submitted a CDCR 7362 medical requests seeking prescription of Neurontin, a pain management drug, which suppressed all types of pain that Plaintiff suffered while on a prior prescription. Plaintiff's requests were ignored along with his requests for a housing accommodation to prevent injury caused by falls triggered by pain.

Plaintiff alleged in his appeal that he was being retaliated against for his civil rights law suit in Case No. ED-cv-15-0833 JVS (AFM). Plaintiff claims that the CSATF medical delivery system has a history of engaging in retaliation against prisoners who file appeals or lawsuits. Plaintiff claims that as a result of the medical retaliation, he was intentionally denied adequate pain management treatment.

On November 17, 2018, Defendant Cryer and the Doe Defendants issued their Institutional Level response to his appeal. In the response, it was noted that Doe Defendants denied Plaintiff's referral to a specialist because surgery was deemed not an option for Plaintiff's condition. Plaintiff claims that it was known that surgery was the only option to treat his condition and the referral was later granted because of his need. Defendant Cryer also noted that Doe Defendants accommodated Plaintiff with an appropriate housing assignment to prevent further physical injuries, but allowed Plaintiff to suffer horrific pain levels that caused him to fall and injure his head and arm. The

response also cited that Plaintiff was prescribed Trileptal, but because he did not tolerate it well, he was subsequently prescribed a low dose of Cymbalta. The Cymbalta failed to reduce Plaintiff's pain to a manageable level and Defendants' actions allegedly caused Plaintiff to suffer for retaliatory purposes for filing a prior medical civil complaint.

On November 28, 2017, Plaintiff completed his appeal form explaining that despite the change to Cymbalta, the institutional response did not explain why Plaintiff was denied adequate care for months when Neurontin was prescribed in the past and suppressed his pain with zero side effects. Plaintiff asserted that Cymbalta was causing him to suffer extreme headaches and temporarily assigning him an appropriate housing accommodation was deflective of the basic care to effectively treat his condition. Plaintiff asserts that the retaliation issue was never addressed by Defendant Cryer or Doe Defendants.

On March 2, 2018, Defendants Gates issued a notice for Defendant Cryer to amend the institutional response.

On March 30, 2018, Defendant Cryer and Doe Defendants altered their original response and added other data. In the amended response, Defendant explained that Plaintiff was prescribed Lyrica and that Doe Defendants were trained and capable of providing care for Plaintiff's pain. Plaintiff asserts that this was false because Defendants prescribed him an outlawed pain management drug with horrific side effects. The amended response also stated that the goal was to maximize treatment of Plaintiff's pain while avoiding serious side effects of stronger pain medication.

On April 15, 2018, Plaintiff filed a subsequent response and resubmitted to Defendant Gates. Plaintiff instructed Defendants to follow their own administrative appeal rules because the amended responses contained new verbiage. Plaintiff claims that the response did not address why he was caused to suffer for months. Plaintiff also pointed out the false claims regarding his Lyrica prescription.

On July 30, 2018, Defendant Gates issued a Headquarters Level Response wherein Plaintiff was provided with a follow up urology consult on his scrotum/testicle conditions, which were previously denied based on Doe Defendants' claim that such a consult was not medically indicated,

and Plaintiff's housing accommodation was merely extended when Doe Defendants and Defendants Cryer and Gates were fully aware that Plaintiff's suffering would not abate. Defendant Gates further defended Doe Defendants' action, stating Plaintiff's condition was monitored and he was properly receiving care as medically indicated. Defendant Gates also addressed Plaintiff's retaliation allegation, but stated that Plaintiff failed to state facts consistent with the allegation.

Plaintiff alleges retaliation against Doe Defendants and Defendants Cryer and Gates.

Relief Requested

Plaintiff seeks general and punitive damages, along with injunctive relief.

### III. Discussion

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, he will be granted an opportunity to cure the deficiencies identified by the Court to extent he is able to do so in good faith. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims.

### A. Federal Rule of Civil Procedure 8

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8. Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557; Moss, 572 F.3d at 969.

Plaintiff's complaint is disjointed, repetitive, and difficult to understand. It is not a plain statement of his claims. As pled, Plaintiff's complaint does not clearly and succinctly state what happened, when it happened or who was involved. Absent clear factual allegations, the Court cannot identify the nature of Plaintiff's claims nor assess whether he has stated a cognizable claim for relief. In any amended complaint, Plaintiff must clearly state what happened, when it happened

and who was involved in the alleged violation of his rights. Plaintiff also repeatedly references exhibits to his complaint. However, there are no exhibits attached to the complaint.

**B.      Supervisory Liability**

Insofar as Plaintiff is attempting to sue Defendant Cryer, or any other defendant, based on his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Here, Plaintiff has failed to adequately allege that Defendant Cryer (or any other supervisory defendant) participated in or directed any constitutional violation or that he implemented a policy so deficient that it was the moving force of any constitutional violation. Plaintiff's conclusory allegations based on review of his administrative appeal are not sufficient to state a cognizable claim.  Further, Plaintiff appears to allege that Defendant Cryer considered the medical care that Plaintiff received but determined that it was sufficient.  These allegations are not sufficient to support a claim based on supervisory liability.

**C.      Failure to Train**

Plaintiff alleges a claim against Defendants Cryer and Gates based on their alleged failure to adequately train prison doctors.  A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the

failure amounts to deliberate indifference. See City of Canton, Ohio v. Harris, 489 U.S. 378, 387–90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can reasonably be said to have been deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting Canton, 489 U.S. at 390).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees," id., unless the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury," Canton, 489 U.S. at 390.

Here, Plaintiff's complaint fails to state a cognizable claim based upon a theory of failure to train or supervise. At best, Plaintiff's factual allegations involving Doe Defendants amount to either a disagreement regarding the appropriate course of treatment or medical malpractice, not deliberate indifference. Thus, there is no indication from Plaintiff's complaint that the failure to train was obvious and likely to result in a constitutional violation.

**D. Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was

8

deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105−106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner−or between medical professionals−concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082−83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122−23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) ). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Doe Defendants

The bulk of Plaintiff's complaint concerns allegations that Doe Defendants failed to provide

Plaintiff with a reasonable housing accommodation and failed to properly treat Plaintiff with medications and refer him to specialists. Plaintiff's complaint fails to state a cognizable claim for inadequate health care in violation of his Eighth Amendment rights.

First, Plaintiff's allegations regarding accommodations do not state a cognizable Eighth Amendment claim against the Doe Defendants. There is nothing in Plaintiff's complaint to suggest that Doe Defendants knew that Plaintiff required a housing accommodation and failed to provide it in disregard to a serious risk of harm to Plaintiff's health. Further, Plaintiff's allegations demonstrate that he was provided with a housing accommodation at some point, but it is not clear that when or if such an accommodation was requested from Doe Defendants.

Second, Plaintiff's allegations regarding the need for specialists are conclusory and lack necessary factual detail to state a cognizable claim against Doe Defendants. According to Plaintiff's complaint, Doe Defendants did not believe that a specialist appointment was necessary to treat Plaintiff's condition. That Plaintiff subsequently required or received a specialist referral demonstrates only that Doe Defendants may have been negligent in diagnosing or treating Plaintiff's condition.

Third, Plaintiff's allegations regarding his pain medication also fail to state a cognizable claim against Doe Defendants. At best, Plaintiff has alleged negligence or medical malpractice resulting from the prescription of Trileptal, which Plaintiff stopped taking, which does not rise to the level of an Eighth Amendment violation, particularly where Plaintiff alleges that Doe Defendants prescribed various medications in an effort to treat Plaintiff's condition.

### Defendants Cryer and Gates

Plaintiff's allegations against Defendants Cryer and Gates also do not demonstrate deliberate indifference to a serious medical need in violation of the Eighth Amendment. As best as the Court can determine, Defendants Cryer and Gates confirmed that Plaintiff received medications and treatment for his pain, a housing accommodation and referral to a specialist.

**E.     Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090,

1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F. 2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff alleges that Defendants refused his appointments with specialists and denied his accommodations and pain medication because he filed a separate civil rights lawsuit. Plaintiff's allegations are conclusory and the Court cannot determine the sequence of events alleged in the complaint or whether Defendants' asserted actions (or inaction) were because of any protected conduct by Plaintiff. There is no indication in the complaint that any of the defendants knew of Plaintiff's separate lawsuit during their course of treatment or during the review of his appeals. In any amended complaint, Plaintiff must clearly and succinctly allege what happened, when it happened and who was involved.

**F. Grievance Procedure**

Insofar as Plaintiff complains about the grievance procedure, he does not state a cognizable claim. Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

**G. Injunctive Relief**

Insofar as Plaintiff seeks injunctive relief against prison officials, any such request is now

moot. Plaintiff is no longer housed at the California Substance Abuse Treatment Facility, where he alleges the incidents at issue occurred, and where the prison officials are employed. Therefore, any injunctive relief against officials at the California Substance Abuse Treatment Facility is moot. See Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

### H. State Law Claims

Plaintiff appears to allege various state law claims, including emotional distress. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. As Plaintiff has not stated a cognizable claim for relief under federal law, the Court declines to screen Plaintiff's purported state law claim.

Further, the Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208–09 (Cal. 2007); State v. Superior Court of Kings Cty. (Bodde), 32 Cal. 4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has failed to allege compliance with the Government Claims Act.

### IV. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **September 4, 2019**        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE